UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELISSA L. COHN and MANHATTAN MORTAGE COMPANY, INC., <br><br> Plaintiffs/ Counter-Defendants, <br><br> v. <br><br> GUARANTEED RATE, INC., <br><br> Defendant/ Counter-Plaintiff. | Case No. 1:14-cv-9369 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant/Counter-Plaintiff Guaranteed Rate, Inc.'s ("GRI") motion to compel discovery, for spoliation sanctions, and to extend the discovery deadline. [63] at 1. For the reasons discussed below, GRI's motion is granted in part and denied in part.

**I. Background**

**A. The Parties' Relationship**

Plaintiff/Counter-Defendant Melissa Cohn ("Cohn") was initially hired by GRI in 2012. [64] at 2. As part of the hiring process, the parties executed a Branch Manager Agreement ("BMA") and an Asset Purchase Agreement ("APA"). *Id.* at 3. Pursuant to those agreements, GRI purchased certain assets of Cohn's company (Manhattan Mortgage Company), and Cohn joined GRI as an Executive Vice President. *Id.* The BMA included covenants that expressly prohibited Cohn from

using or disclosing GRI's confidential information, soliciting GRI employees, and soliciting GRI's customers. *Id.*

By November of 2013, the parties' relationship had soured. During that month, Cohn sent emails indicating that: (1) the "lawsuit [between herself and GRI] will be so much fun"; (2) "He [GRI's CEO] will have to concede or major atty action"; (3) GRI's CEO was "not adhereing [sic] to his contract with me. I cannot wait to wipe his . . . . [sic]"; and (4) Cohn had initiated discussions with her counsel of record. *Id.* at 4.

In February of 2014, Cohn's counsel sent a letter to GRI concerning its perceived breaches of the BMA and APA. *Id.* Cohn's counsel sent similar letters to GRI in May, July, and August of 2014.

GRI's counsel also sent multiple letters to Cohn that suggested litigation regarding her employment with GRI was a distinct possibility. For example, in July of 2014 GRI's counsel wrote the following to Cohn's counsel: "we have not agreed to anything yet regarding the non-solicitation matter and having Melissa in that office only increases the likelihood that violations of her agreement will occur," and if she "continues to breach the terms of her employment agreement, we will not continue to evaluate an amicable separation." *Id.*, Ex. 1.

Cohn's last day with GRI was August 8, 2014. *Id.* at 5. In November of 2014, she initiated this lawsuit. [1] at 1. In February of 2016, GRI filed its counterclaims, alleging, *inter alia*, that Cohn breached the BMA by failing to properly discharge her duties, divulging GRI's confidential information to

2

competitors, and soliciting or otherwise inducing then-current GRI employees to divert loans to competitors and to leave GRI. [48] at 28-29.

### B. Cohn's Communications With GRI's Competitors

GRI requested from Cohn documents (including emails from Cohn's "Gmail" account and LinkedIn) reflecting Cohn's communications with any of GRI's competitors. [64], Ex. 7. Cohn responded that, to the extent documents responsive to those requests existed, they would be produced. *Id.* To date, Cohn has not produced a single message from her Gmail account with any of GRI's competitors. *Id.* at 14.

Cohn's failure to produce this material forced GRI to serve third party discovery requests on a number of its competitors, including CMG Financial, Supreme Lending, Luxury Mortgage, and GuardHill (the company Cohn joined after leaving GRI in August of 2014). *Id.* at 7-11. The competitors' document productions contained numerous messages to and from Cohn that she had never produced. These messages include, *inter alia*:

- Emails with CMG Financial regarding potential employment starting in November of 2013. At the onset of her conversations with CMG Financial, Cohn "ask[ed] that [they] turn to [her] gmail account." *Id.*, Ex. 3. In December of 2013, in response to CMG's Financial's requests for information about GRI's business metrics, Cohn indicated that she would "send what I can against all advise [sic]." *Id.* That same month she sent CMG Financial the following request: "Hide the info I sent was [sic] the max that my atty will allow—well actually more. I simply cannot put more in writing." *Id.*

- Emails with GuardHill regarding Cohn's potential employment with them while she was still employed by GRI. *Id.*, Ex. 14.

3

- Emails with Supreme Lending regarding potential employment starting in April of 2014. *Id.*, Ex. 8. Cohn also sent Supreme Lending multiple emails regarding GRI's business practices, including one in June of 2014 which she marked "**CONFIDENTIAL-DO NOT FORWARD**." That same message contained her personal production numbers at GRI, her volume for the preceding two years at GRI, GRI's percentages of refinances, and her team's production numbers at GRI. *Id.*

- Emails with Luxury Mortgage regarding Luxury Mortgage's business practices and potential advantages for brokers on Cohn's "team," sent during Cohn's employment with GRI. *Id.*, Ex. 9.

### C. Cohn's Communications Regarding Her Document Retention

On June 18, 2014, Cohn emailed a subordinate and told him to begin communicating using their personal email addresses. *Id.*, Ex. 1. In that same email thread, Cohn instructed her subordinate to "delete our grate [Guaranteed Rate] emails to permanent tras[h]." *Id.* In separate messages, Cohn also indicated that she was "not a gmail expert," *id.*, Ex. 3, and had "millions of emails" in her Gmail account. *Id.*, Ex. 9.

In her response to GRI's present motion, Cohn admits that she "deleted the subject emails with third-parties from her personal Gmail account in November of 2013, April-June of 2014, and July of 2014." [68] at 2. Whether these emails are recoverable is not clear from the record.

## II. Legal Standard

Rule 37 of the Federal Rules of Civil Procedure permits a party to move to compel disclosure and for sanctions where "a party fails to produce documents or fails to respond that inspections will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(b)(iv). An "evasive or incomplete

4

disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3)(4).

In addition, Rule 37(e) describes some of the remedies that a court may order in the event that electronically stored information is destroyed:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The Court also has broad, inherent power to impose sanctions for failure to produce discovery and for destruction of evidence, over and above the provisions of the Federal Rules. *SEC v. First Choice Mgt. Servs., Inc.*, 678 F.3d 538, 543 (7th Cir. 2012); *Jones v. Bremen High Sch.*, No. 08-cv-3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010).

5

### III. Analysis

Spoliation of evidence "occurs when one party destroys evidence relevant to an issue in the case." *Smith v. United States*, 293 F.3d 984, 988 (7th Cir. 2002). Before imposing sanctions for spoliation, the Court must find that: (1) there was a duty to preserve the specific documents and/or evidence; (2) the duty was breached; (3) the other party was harmed by the breach; and (4) the breach was caused by the breaching party's willfulness, bad faith, or fault. *See Jones*, 2010 WL 2106640, at *5.

#### A. Duty to Preserve

A party has a duty to preserve evidence "that it has control over and which it reasonably knows or can foresee would be material (and thus relevant) to a potential legal action." *Jones*, 2010 WL 2106640, at *6. At "the latest, this duty attaches when the plaintiff informs the defendant of her potential claim." *Haraburda v. Arcelor Mittal USA, Inc.*, No. 2:11 CV 93, 2011 WL 2600756, at *1 (N.D. Ind. June 28, 2011). The duty to preserve is broad and "encompasses any evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action." *Scruggs v. Miller*, No. 3:16-CV-050 JD, 2016 WL 495603, at *5 (N.D. Ind. Feb. 8, 2016). Federal courts across the country have recognized that a "plaintiff's duty [to preserve] is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 466 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J.*,

685 F.3d 135 (2d Cir. 2012); *see also Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 340 (D. Conn. 2009) (duty to preserve arose when plaintiff retained counsel in connection with potential legal action); *Cyntegra, Inc. v. Idexx Labs., Inc.*, No. 06-cv-4170, 2007 WL 5193736, at *3 (C.D. Cal. Sept. 21, 2007) ("Unlike defendants, plaintiffs may be imputed notice of the duty to preserve potentially relevant evidence prior to the filing of the complaint. Plaintiffs are in control of when the litigation is to be commenced and must necessarily anticipate litigation before the complaint is filed.") (internal citation omitted).

The Court finds that Cohn had a duty to preserve her communications with GRI's competitors by at least November 30, 2013. By that point Cohn was making explicit references to legal action against GRI and its officers, and she had retained the attorney who represents her in this lawsuit. [64], Ex. 1. She was also making overtures to certain of GRI's competitors by that time. *See supra* at 3-4. In light of those facts and her clear obligations under the APA and BMA, Cohn and her counsel should have been able to "foresee" by November of 2013 that her communications with GRI's competitors "would be material (and thus relevant) to a potential legal action." *Jones*, 2010 WL 2106640, at *6.

**B. Breach**

As discussed above, Cohn admits that she "deleted the subject emails with third-parties from her personal Gmail account in November of 2013, April-June of 2014, and July of 2014." [68] at 2. These deletions are an obvious breach of her duty to preserve those same materials.

7

## C. Harm/Bad Faith

Cohn insists that GRI cannot demonstrate the requisite harm here, as "GRI is in possession of the emails at issue" by virtue of its third party discovery practice. [68] at 12.

GRI conversely argues that no demonstration of harm is required, as "harm or prejudice is presumed where, as here, the moving party has shown bad faith." [69] at 13 (internal citation omitted); *see also Fuery v. City of Chicago*, No. 07-cv-5428, 2016 WL 5719442, at *11 (N.D. Ill. Sept. 29, 2016) (The "Court may still impose sanctions even where there is no prejudice but the actions of the party exhibit such flagrant contempt for the court and its processes that to allow the offending party to continue to invoke the judicial mechanism for its own benefit would raise concerns about the integrity and credibility of the civil justice system that transcend the interests of the parties immediately before the court.") (internal quotation omitted).[1]

GRI's argument best reflects contemporary Seventh Circuit precedent. Indeed, the "prevailing rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction." *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001). A document is

---

[1] GRI also argues that Cohn's deletion of the subject emails precipitated "actual harm," insofar as their deletion changed "the original file entry" and corresponding metadata, which in turn made "it impossible to verify that the [third party] file is identical to the original, even if the file's content appears unchanged." [64] at 15 (quoting *Krumwiede v. Brighton Associates, L.L.C.*, No. 05 C 3003, 2006 WL 1308629, at *4 (N.D. Ill. May 8, 2006)). In light of the Court's findings regarding the inference of harm, however, the Court does not address this argument.

8

destroyed in bad faith if it was done "for the purpose of hiding adverse information." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) (internal citation omitted); *see also Norman-Nunnery v. Madison Area Tech. College*, 625 F.3d 422, 428 (7th Cir. 2010) ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed for the purpose of hiding adverse information.").

In this case, Cohn moved her conversations with GRI's competitors to her Gmail account, and then asked those same competitors to "hide the info" she sent because "it was the max that [her] atty will allow—actually more. [She] simply cannot put more in writing." *See supra* at 3. She acknowledged that her conversations with GRI's competitors over Gmail were undertaken "against all advise [sic]." *Id.* She sent data to GRI's competitors over Gmail that she herself labelled "**CONFIDENTIAL**." *Id.* at 4. Worse yet, she instructed a subordinate at GRI to "delete our grate [Guaranteed Rate] emails to permanent tras[h]." *Id.*

The explicit language of these communications belies any suggestion that Cohn's deletion of the subject emails was simply part of her regular business practice. The Court finds that Cohn deleted the subject emails to, in her own words, "hide" adverse information. Deleting material "for the purpose of hiding adverse information" compels a finding of bad faith. *Norman-Nunnery*, 625 F.3d at 428. This bad faith determination in turn gives "rise to a strong inference that production of the [subject emails] would have been unfavorable" to Cohn. *Crabtree*, 261 F.3d at 721.

9

**D.     Remedy**

GRI requests the most extreme sanctions available pursuant to the Federal Rules of Civil Procedure and this Court's inherent power: the dismissal of Cohn's claims, entry of default judgment, or the issuance of adverse inference instructions at trial. Alternatively, GRI requests the native production of Cohn's entire Gmail account, the production of Cohn's Gmail log-in and password credentials, the production of Cohn's work and personal computers so GRI might pursue a forensic inspection, and the issuance of an injunction preventing Cohn from altering, destroying, or modifying any evidence in any way. The Court must determine "whether the proposed sanction can ameliorate the prejudice that arose from the breach; if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction." *Jones*, 2010 WL 2106640, at *5.

As a preliminary matter, GRI's request for equitable relief is denied. GRI has made none of the requisite showings to justify such an imposition, and Cohn is already subject to the retention requirements that form the basis of this Order.

GRI's request for the dismissal of Cohn's claims and entry of default judgment is not commensurate with the harm implicated here. While harm is appropriately inferred when the responding party exhibits bad faith, the practical imposition suffered by GRI in this case is mitigated by the documents uncovered pursuant to third party discovery.

The Court finds, however, that, at a minimum, GRI must be given full access to Cohn's Gmail account. The parties are directed to meet-and-confer regarding the

practical form of GRI's access (i.e., native production of Cohn's Gmail account, production of Cohn's Gmail log-in and password, production of Cohn's relevant hardware, or some other mutually agreeable option) before the next status date. The parties are further directed to advise the Court at the next status date regarding: (1) their ability to retrieve any ostensibly deleted subject emails, and (2) a mutually agreeable date for the new close of fact discovery, in light of this Order.

GRI's request for an adverse inference instruction is denied without prejudice. Hopefully, the production of Cohn's full Gmail account will obviate the need for such instructions.[2] If, at the time pretrial submissions come due, GRI nevertheless remains convinced that such instructions are appropriate, it is invited to renew its motion with specific proposals regarding the same.

---

[2] The Court also expects that this Order resolves the parties' dispute regarding Cohn's "hard copy" emails.

## IV. Conclusion

For the foregoing reasons, GRI's motion to compel discovery, for spoliation sanctions, and to extend the discovery deadline [63] is granted in part and denied in part. GRI's request for fees and costs is denied. *See* Fed. R. Civ. P. 37(5)(C) ("If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

Dated: December 8, 2016

Entered:

John Robert Blakey
United States District Judge